FENNEMORE CRAIG, P.C.
Timothy Berg (No. 004170)
Emily Ward (No. 029963)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: tberg@fclaw.com
Email: eward@fclaw.com

*Attorneys for Defendant*
*Governor Douglas A. Ducey*

GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson (admitted *pro hac vice*)
Matthew D. McGill (admitted *pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 887-3680
Email: tolson@gibsondunn.com
Email: mmcgill@gibsondunn.com

OFFICE OF THE GOVERNOR
Anni Foster (No. 023643)
1700 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-4331
Email: afoster@az.gov

*Attorneys for Defendant*
*Governor Douglas A. Ducey*

GREENBERG TRAURIG, LLP
Michael T. Liburdi (No. 021894)
2375 E. Camelback Road
Phoenix, AZ 85016
Telephone: (602) 445-8520
Email: liburdim@gtlaw.com

*Attorneys for Defendant*
*Governor Douglas A. Ducey*

MARK BRNOVICH
ATTORNEY GENERAL
(Firm No. No. 14000)
Dominic E. Draye (No. 033012)
  Solicitor General
Keith J. Miller (No. 029885)
  Assistant Solicitor General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
Telephone: (602) 542-3333
Email: Dominic.Draye@azag.gov
Email: Keith.Miller@azag.gov
Email: SolicitorGeneral@azag.gov

*Attorneys for Defendant*
*State of Arizona*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael Pierce,<br><br>     Plaintiff,<br><br>     v.<br><br>Douglas A. Ducey, in his capacity as Governor of the State of Arizona,<br><br>     Defendant. | No. CV-16-01538-PHX-NVW<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |

Nearly two years after he originally filed his complaint, more than a year after trial on the merits, after the case was rendered moot, and contemporaneously with his filing of a motion that "seeks to conclude this litigation with the entry of final judgment," Dkt. 122 at 2, Plaintiff Michael Pierce seeks to amend his complaint for a third time in order to assert new facts, legal theories, and relief that he could have asserted at the outset of this case. Defendant Governor Ducey respectfully requests that this Court deny Plaintiff's Motion for Leave to File Third Amended Complaint.[1]

### I.   Background

In May 2016, Pierce filed suit in this Court alleging that Proposition 123, which amended the Arizona Constitution and altered the formula for distributions from the Arizona Permanent Endowment Trust Fund ("Trust Fund"), violated the Enabling Act of 1910 because it lacked congressional consent. Dkt. 1. Pierce amended his complaint in June 2016 and then again in January 2017. Dkt. 13, 41. Pierce's operative Second Amended Complaint challenges only Prop. 123 and seeks only one form of relief—an injunction preventing the implementation of Prop. 123 until Congress provided its consent. Dkt. 41.

This Court held a hearing on the Governor's motion to dismiss and Pierce's motion for a preliminary injunction in March 2017. Dkt. 102. At that hearing, and at the Court's request, the parties agreed that the case was ripe for judgment and, thus, the Court converted the motion for preliminary injunction into a trial on the merits. Dkt. 113 at 1.

Nearly a year later, Congress consented to Prop. 123 in the Consolidated Appropriations Act, which the President signed on March 23, 2018. Pub. L. 115-141, Title IV, Sec. 401 (2018) ("H.R. 1625").

---

[1] The State of Arizona was "dismissed from this action for a lack of jurisdiction under the 11th Amendment." Dkt. 100. In the Court's March 26, 2018 docket entry, however, the Court stated it was denying the State of Arizona's Motion to Dismiss. Dkt. 113 at 32. Therefore, for the avoidance of doubt, the State joins the Governor in opposing Pierce's instant motion.

On March 26, 2018, this Court issued an order that concluded, *inter alia*, that the remedy requested by Pierce's Second Amended Complaint had become moot due to H.R. 1625. Dkt. 113 at 1–2 ("The case is now moot to the extent of school land trust fund distributions from this time forward."). Nonetheless, the Court noted that there were still potentially other questions to be resolved: first, whether H.R. 1625 retroactively authorized the distributions already made under Prop. 123; and second, whether H.R. 1625 retroactively authorized Proposition 118 and the Trust Fund distributions made thereunder. *Id.* at 32.

On April 16, 2018, the Court held a status conference to determine what claims Pierce intended to pursue. Ten days later, on April 26, 2018, Pierce filed the instant "Plaintiff's Motion For Leave To File Third Amended Complaint." Dkt. 119.

Finally, on May 1, 2018, Pierce filed a motion for entry of final judgment on the merits on Claim One of his proposed Third Amended Complaint. Dkt. 122. Therein, Pierce states that he agrees that H.R. 1625 moots his only pending claim for relief and that H.R. 1625 retroactively authorized all distributions under Prop. 123. *Id.* at 2. Pierce further stated that he is not asserting claims relating to Prop. 118 in federal court. *Id.*

## II.   The Relief Pierce Now Seeks Cannot Be Granted Under Pierce's Current Complaint.

Pierce's proposed Third Amended Complaint seeks a brand new remedy: an injunction prospectively enjoining the Governor and his agents from implementing any future changes to the Trust Fund "until and unless Congress provides consent to such changes by way of amendment to the Arizona Statehood and Enabling Act." Proposed Third Amended Complaint at 6, ¶ 3. Pierce argues that "[t]he proposed Third Amended Complaint seeks injunctive relief that logically flows from facts and law that have already been addressed by the Court," and thus "the Court arguably can provide this relief without amendment to the complaint." Dkt. 119 at 3. That is incorrect. As Pierce admits, the

controversy over Prop. 123 is moot. And no ripe controversy exists as to hypothetical future changes to the Trust Fund formula. This Court therefore lacks Article III jurisdiction to grant Pierce *any* form of relief. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

In his operative complaint, Pierce challenged Prop. 123 because it lacked Congressional consent, and sought to "enjoin[] the State of Arizona from implementing the Proposition 123 changes to Article X, Section 7 of its Constitution unless Congress amends the Enabling Act to authorize or consent to such changes." Dkt. 41 at 7. Congress expressly consented to Prop. 123 in H.R. 1625. Thus, the conduct Pierce complained of—implementation of Prop. 123 without congressional consent—has been eliminated. As the Court recently noted, "[t]he case is now moot to the extent of school land trust fund distributions from this time forward." Dkt. 113 at 1–2. Pierce agrees. Dkt. 122 at 2. And he also agrees that H.R. 1625 retroactively authorized all distributions previously made pursuant to Prop. 123. *Id.*

Pierce nevertheless argues that this Court still has jurisdiction to enter a judgment on the merits in favor of Pierce under the "voluntary cessation" exception to the mootness doctrine. *Id.* at 2–3. Under the voluntary cessation exception, mootness will not bar a case where "the *defendant* voluntarily ceases the allegedly improper behavior in response to suit, but *is free to return to it at any time*." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994) (emphases added). For three independent reasons, the voluntary cessation exception cannot apply here.

First, H.R. 1625 is not an act of voluntary cessation by the Governor. It is, instead, an Act of Congress. That the Governor requested federal legislative action does not make the Act of Congress an act of the Governor. The Governor and Congress are not even part

1  of the same sovereign—and the actions of one certainly cannot be ascribed to the other in
2  order to circumvent Article III's constitutional limits on federal courts' jurisdiction.

3  Second, H.R. 1625 does not leave the Governor "free to return," *Defunis v.
4  Odegaard*, 416 U.S. 312, 318 (1974), to the allegedly unlawful conduct of implementing
5  Prop. 123 in the absence of congressional consent. It is not Governor Ducey, but the state
6  treasurer, who implements Prop. 123. *See* Ariz. Rev. Stat. Ann. § 41-172 (2012); *see also*
7  Ariz. Const. art. X, § 7. Moreover, under H.R. 1625, it is *impossible* for any state official
8  to "return" to implementing Prop. 123 in the absence of congressional consent for the
9  simple reason that Congress's consent may not be rescinded by anyone but Congress. If,
10 before H.R. 1625, the State of Arizona had declared that it would stop implementing Prop.
11 123—and was still a party to this litigation—*that* would have been voluntary cessation.
12 But that is not what happened here.

13 Third, the Ninth Circuit has held that when the mooting event is a change in the
14 law, this usually does not qualify as voluntary cessation. *Blatchford*, 38 F.3d at 1510.
15 The reason is straightforward: when the case becomes moot because the law has been
16 amended, the case can become live again only if the law is returned to its earlier state,
17 which is an onerous and lengthy process requiring a plurality of actors and thus presents
18 little concern of defendant "recidivism." And that rationale applies with only greater
19 force here, where the defendant is entirely separate from the legislature that enacted the
20 change in law and where the hypothesized "return" requires a *constitutional* amendment.

21 To the extent that Pierce would rest his claim for judgment on the possibility of
22 future changes to the Trust Fund distribution formula that the State might enact, Pierce's
23 speculation does not present a controversy with the ripeness that Article III requires.
24 Claims predicated on legislation that has not yet been enacted are insufficient to establish
25 Article III jurisdiction. *See Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1062 (7th
26 Cir. 2016) ("It is, of course, a fundamental principle that '[f]ederal courts . . . cannot . . .

advise on the constitutionality of proposed legislation.'") (insertions and omissions in the original) (citations omitted); *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (holding that a case was not ripe for review because it was "devoid of any factual context whatsoever [and n]either the district court nor [the Ninth Circuit] can be 'umpire to debates concerning harmless, empty shadows.'") (citations omitted); *see also Kronberg v. Hale*, 180 F.2d 128, 130 (9th Cir. 1950) ("[T]he federal courts have consistently held that the judicial power does not extend to the rendition of advisory opinions on *hypothetical states of facts*.") (emphasis added). "Ever since the Constitutional Convention . . . it has been clear that . . . the task of analyzing a proposed statute, pinpointing its deficiencies, and requiring correction of these deficiencies before the statute is put into effect, is rarely if ever an appropriate task for the judiciary." *Younger v. Harris*, 401 U.S. 37, 52 (1971).

There are two basic rationales for that rule. First it is a common-sense truth that the plaintiff cannot suffer an injury-in-fact based on a state law until the state law has been enacted. Article III requires a plaintiff to have suffered an injury in fact that is "actual or imminent, not *'conjectural'* or *'hypothetical*.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (emphases added). Here, the prospect of a future amendment to the Arizona Constitution to alter the Trust Fund formula—and the notion that Pierce would be injured by that—is entirely speculative, resting on the suppositions that: at some unspecified date in the future, either the legislature or a group of citizens equal to 15% of the votes cast for governor in the last election would propose a constitutional amendment and then more than 50% of Arizonans voting on the measure would approve it, Congress would not consent, and Arizona would implement the measure anyways. Pierce asserts that "Arizona has changed the distribution formula three times in the past 20 years [and] it is reasonably likely that it will do so again in the foreseeable future," Dkt. 119 at 2, but this sort of divination is the exact kind of

"conjectural" harm that does not qualify for standing.[2]

Second, details of the legislation, and the particular way in which it affects the plaintiff, may inform the analysis of a plaintiff's legal claims. If and when Arizona next amends its Constitution to alter the Trust Fund distribution formula, Pierce may have changed his views about whether such an amendment in the absence of congressional consent injures him. Indeed, it is possible—and certainly no less probable than the future amendment Pierce hypothesizes—that Congress will amend the Enabling Act to clarify whether consent to changes to the Trust Fund distribution formula is even required. That would mean that there would be no violation of federal law. Yet the injunction Pierce proposes still would enjoin the change to the Trust Fund formula unless Congress provides consent. This illustrates starkly why the ripeness doctrine exists: it prevents the premature and ill-informed adjudication of claims that may never arise. *See Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967) (The "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ."). Pierce's effort to enjoin future changes to the Trust Fund formula violates that basic Article III requirement.

### III. Pierce Is Not Otherwise Entitled To Amend His Complaint To Add A Claim Attacking Hypothetical Changes To The Trust Fund Formula.

Pierce says his proposed amendment "makes some non-substantive stylistic changes, adds allegations that support this request for injunctive relief, [] deletes requests for relief that became moot during the course of this action [and] also eliminates Claim Two, which was a flawed claim to fees based on § 1988." Dkt. 119 at 2. Among other things, Pierce (i) alleges that Governor Ducey continues to assert that congressional consent is unnecessary, (ii) alleges that future unauthorized distributions have "a

---

[2] Moreover, only congressionally *unauthorized* amendments would, on Pierce's theory, cause injury, but the parties agree that at least two of the three prior amendments Pierce references ultimately were authorized by Congress.

likelihood of recurring," and (iii) changes his requested remedy to enjoin any future unauthorized distributions. Dkt. 119-2 at 6–7.

Pierce's motion is captioned as a motion to "amend" and cites only Rule 15(a). Dkt. 119 at 3. Pierce is not entitled to relief under either that provision or Rule 15(d)'s provisions for supplementing complaints, which were mentioned by the Court as a potential basis for amendment.

### A.  Pierce May Not Amend His Complaint Under Rule 15(a).

Rule 15(a) is captioned "[a]mendments before trial." FED. R. CIV. P. 15(a). As that title suggests, Rule 15(a) is unavailable for post-trial amendments. Here, "Plaintiff's Motion for Preliminary Injunction . . . was converted to a final trial." Dkt. 113 at 1. It is therefore much too late for Pierce to seek amendment under Rule 15(a).

Even if the trial on the merits had not already concluded, amendment under Rule 15(a) still would be inappropriate. While leave to amend should be "freely given," leave may still be denied when, for example, there has been "undue delay, bad faith or dilatory motive[,] . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party[,] . . . futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors weigh against granting Pierce's motion to amend.

First, Pierce's delay in bringing these amendments is inexcusable. It has been nearly two years to the day since Pierce filed his original complaint. Dkt. 1; *see Komie v. Buehler Corp.*, 449 F.2d 644, 648 (9th Cir. 1971) (affirming denial of leave to amend and stressing the fact that "[t]he motion was made 31 months after the answer was filed, eleven months after the pretrial statement was signed, and more than six months after the case was set for trial."); *see also AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("We have held that an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable.").

Since filing in May 2016, Pierce has twice amended his complaint, he moved for a preliminary injunction and Defendants moved to dismiss, the Court gathered facts, and prepared the case for final disposition. Pierce himself admits "that the relief sought" in his proposed Third Amended Complaint "could have been part of the prayer for relief in the Second Amended Complaint." Dkt. 119 at 3. Pierce understates it—his proposed amendments could have been made from the outset of this litigation, because it has always been possible that the Arizona Constitution might be amended to alter the Trust Fund distribution formula in the future. *See AmerisourceBergen Corp.*, 465 F.3d at 953 ("[I]n evaluating undue delay [the court] inquire[s] 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'") (citations omitted).

Second, Pierce has had ample opportunities to remedy any deficiencies in his complaint and add new claims for relief. Pierce filed his original complaint in May 2016, Dkt. 1, his first amended complaint in June 2016, Dkt. 13, and his second amended complaint in January 2017, Dkt. 41. He should not now, after a trial on the merits, be given a *fourth* bite at the apple. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988) (affirming a denial of leave to amend in part because they had amended their complaint twice already).

Third, Pierce's amendments would be futile because, as noted above, Pierce's proposed amendment with respect to hypothetical future amendments to the Arizona Constitution is beyond the Court's jurisdiction. *See Townsend v. Univ. of Alaska*, 543 F.3d 478, 481 (9th Cir. 2008) (affirming a district court's decision to deny leave to amend when the "amendment would be futile because jurisdiction would still be lacking."). Article III limits a federal court's jurisdiction to actual cases and controversies, which requires a plaintiff to have suffered an injury in fact that is "actual or imminent, not *'conjectural'* or *'hypothetical.'*" *Lujan*, 504 U.S. at 560 (citations omitted) (emphases

added). Pierce's new, supposed injury is hypothetical by its very nature. The harm on which he centers his new complaint is that, at some future date, either the legislature or the people of Arizona might propose some unspecified amendment to their constitution amending Trust Fund distributions, that such amendment might be approved by the people of Arizona, that Congress might not approve of such amendment, and that some unnamed state official might then enforce the amendment anyway. This is pure speculation, unripe for adjudication, which does not satisfy Article III's minimum requirements for justiciability.

There is another, separate, reason why Pierce's amendments would be futile. Pierce's proposed complaint seeks to enjoin the Governor and his agents from implementing congressionally unauthorized changes to the Trust Fund. Dkt. 119-2 at 7. The Governor, however, is not responsible for implementing Prop. 123. Rather, the State Treasurer, an independently elected state official, is responsible for its implementation. *See* Ariz. Rev. Stat. Ann. § 41-172 (2012); *see also* Ariz. Const. art. V, § 1; Ariz. Const. art. X, § 7. Pierce's proposed new claim against the Governor thus cannot stand.

Fourth, the Governor will be prejudiced by Pierce's proposed amendments. Pierce's case concerning Prop. 123 is moot—his complained of conduct resolved. Pierce is wrong that "the right to [the new] relief can be established without proving additional disputed facts." Dkt. 119 at 3. To the contrary, Pierce's new complaint puts the litigation back at square one: subject-matter jurisdiction. And the factual predicates for a finding of injury in fact resulting from a hypothetical future amendment to the Arizona Constitution here *are* very much disputed. *See AmerisourceBergen Corp.*, 465 F.3d at 953 (affirming a denial of leave to amend in part because "[a]llowing [movant] to advance different legal theories and require proof of different facts at this stage in the litigation would have prejudiced" the other party) (internal quotations omitted).

Pierce has, without cause, waited nearly two years, until the close of litigation, to

bring an entirely new claim for relief that could have been brought in any one of his previously filed complaints. Now he seeks to introduce amendments that would prejudice the Governor, raise new and burdensome issues of law, and ultimately be futile, since they cannot meet Article III's threshold requirements for justiciability. As such, his motion for leave to amend should be denied.

### B. Pierce May Not Supplement His Complaint Under Rule 15(d).

Pierce does not argue that his amendment is permitted under Rule 15(d), but because Rule 15(d) was addressed by the Court in the most recent status conference, we address it here. It is not an appropriate basis for Pierce's proposed amendment.

First, Rule 15(d) is inapplicable on its face. The Rule states, in relevant part, that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." FED. R. CIV. P. 15(d) (emphasis added). There has been a significant change in the law since Pierce's last complaint—Congress's consent to Prop. 123 through H.R. 1625. But this change has nothing to do with Pierce's proposed amendments to his complaint. Pierce himself admits he could have asserted his proposed amendments long before Congress passed H.R. 1625, and that is fatal to Rule 15(d)'s availability.

Second, rather than supplement his existing case, Pierce's new complaint would assert an entirely new cause of action as to future, hypothetical amendments to the Arizona Constitution. The Ninth Circuit has ruled that Rule 15(d) "cannot be used to introduce a 'separate, distinct and new cause of action.'" *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotation marks and citations omitted). In *Neely*, the Ninth Circuit considered a case where the plaintiffs had originally challenged one state law, obtained a favorable judgment, and then, after the state legislature amended that law, sought to supplement their pleading to challenge the new law. The court held that a supplemental pleading was inappropriate, in part because

"[a]lthough both the original suit and the supplemental complaint sought to challenge Arizona's parental consent law, *the supplemental complaint challenged a different statute than the one that had been successfully challenged in the original suit.*" *Id.* (emphasis added). Here, Pierce swaps a challenge of Prop. 123 for one challenging future *hypothetical* laws of unknown character, timing, and certainty. His case thus is an even more flawed candidate for Rule 15(d) than the case the Ninth Circuit rejected in *Neely*.

Finally, Pierce's proposed amendment would undermine, rather than promote, judicial economy. *See Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (stating that a purpose of Rule 15(d) is to promote judicial economy). While this litigation has been pending, Pierce has brought suit in Arizona state court, similarly challenging Arizona's distributions from the Trust Fund. *Pierce v. Ducey*, CV2018-000108 (Superior Court of Arizona). He recently amended his complaint in that case to challenge distributions made under Prop. 118. If this Court permits Pierce to supplement his complaint in this case, this case and the state case will continue on essentially parallel tracks. Rather than promoting judicial economy, it will duplicate judicial efforts, requiring two different courts to hear two related cases, and requiring the Governor to defend in two separate forums.

**IV.  Conclusion**

Pierce seeks to amend his complaint for a third time—after a trial and after two years of delay. He admits he could have made his proposed amendments sooner. They assert new facts, new legal theories, and new forms of relief that this Court has no Article III jurisdiction to grant.

For the foregoing reasons, we respectfully request that this Court DENY Pierce's motion.

| | | |
|---|---|---|
|1| DATED this 17th day of May, 2018. | |
|2| MARK BRNOVICH | FENNEMORE CRAIG, P.C. |
|3| ATTORNEY GENERAL | |

DATED this 17th day of May, 2018.

MARK BRNOVICH
ATTORNEY GENERAL

By s/ *Dominic E. Draye* (w/permission)
   Dominic E. Draye
    Solicitor General
   Keith J. Miller
    Assistant Attorney General

*Attorneys for Defendant*
*State of Arizona*

FENNEMORE CRAIG, P.C.

By s/ *Timothy Berg*
   Timothy Berg
   Emily Ward

OFFICE OF GOVERNOR
DOUGLAS A. DUCEY
   Anni Foster

GIBSON, DUNN & CRUTCHER LLP
   Theodore B. Olson
   Matthew D. McGill

GREENBERG TRAURIG, LLP
   Michael T. Liburdi

*Attorneys for Defendant*
*Governor Douglas A. Ducey*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2018, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Andrew S. Jacob<br>Gordon & Rees LLP<br>111 W Monroe Street, Suite 1600<br>Phoenix, AZ 85003-1736<br>Email: AJacob@gordonrees.com<br>*Attorneys for Plaintiff* | Anni Foster<br>Office of the Governor<br>1700 W. Washington Street<br>Phoenix, AZ 85007<br>Email: afoster@az.gov<br>*Attorneys for Defendant*<br>*Governor Douglas A. Ducey* |
| Theodore B. Olson<br>Matthew D. McGill<br>Gibson, Dunn & Crutcher, LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Email: tolson@gibsondunn.com<br>Email: mmcgill@gibsondunn.com<br>*Attorneys for Defendant*<br>*Governor Douglas A. Ducey* | Dominic E. Draye<br>Keith J. Miller<br>Arizona Attorney General's Office<br>2005 N. Central Avenue<br>Phoenix, AZ 85004-1592<br>Email: Dominic.Draye@azag.gov<br>Email: Keith.Miller@azag.gov<br>Email: SolicitorGeneral@azag.gov<br>*Attorneys for Defendant State of Arizona* |

s/ *Phyllis Warren*
An employee of Fennemore Craig, P.C.

13931542