FENNEMORE CRAIG, P.C.
Timothy Berg (No. 004170)
Emily Ward (No. 029963)
2394 E. Camelback Road, Suite 600
Phoenix, AZ  85016-3429
Telephone:  (602) 916-5000
Email: tberg@fclaw.com
Email: eward@fclaw.com

*Attorneys for Defendant*
*Governor Douglas A. Ducey*

GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson (admitted *pro hac vice*)
Matthew D. McGill (admitted *pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  (202) 887-3680
Email:  tolson@gibsondunn.com
Email:  mmcgill@gibsondunn.com

OFFICE OF THE GOVERNOR
Anni Foster (No. 023643)
1700 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-4331
Email: afoster@az.gov

*Attorneys for Defendant*
*Governor Douglas A. Ducey*

GREENBERG TRAURIG, LLP
Michael T. Liburdi (No. 021894)
2375 E. Camelback Road
Phoenix, AZ 85016
Telephone: (602) 445-8520
Email:  liburdim@gtlaw.com

*Attorneys for Defendant*
*Governor Douglas A. Ducey*

MARK BRNOVICH
ATTORNEY GENERAL
(Firm No. No. 14000)
Dominic E. Draye (No. 033012)
  Solicitor General
Keith J. Miller (No. 029885)
  Assistant Solicitor General
2005 N. Central Avenue
Phoenix, AZ  85004-1592
Telephone:  (602) 542-3333
Email:  Dominic.Draye@azag.gov
Email:  Keith.Miller@azag.gov
Email:  SolicitorGeneral@azag.gov

*Attorneys for Defendant*
*State of Arizona*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Pierce,<br><br>        Plaintiff,<br><br>    v.<br><br>Douglas A. Ducey, in his capacity as<br>Governor of the State of Arizona,<br><br>        Defendant. | No. CV-16-01538-PHX-NVW<br><br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT ON THE MERITS** |

Plaintiff Michael Pierce moves for the entry of final judgment on the merits on a claim he makes only in his proposed and not-yet-allowed Third Amended Complaint.  He

FENNEMORE CRAIG, P.C.
PHOENIX

1   concedes that his claim regarding Proposition 123 is moot, so the Court cannot enter

2   judgment on that claim.  Further, the Court lacks jurisdiction over Pierce's proposed new

3   claim regarding a hypothetical future amendment to Arizona's Constitution, which is not

4   ripe for adjudication.  In any event, Pierce's instant motion is procedurally defective.

5   Defendant Governor Ducey respectfully requests that the Court deny Plaintiff's motion.[1]

6   **I.    Background**

7        In May 2016, Pierce filed suit in this Court alleging that Proposition 123, which

8   amended the Arizona Constitution and changed the distribution formula for the Arizona

9   Permanent Endowment Trust Fund, ("Trust Fund"), violated the Enabling Act of 1910

10   because it lacked congressional consent.  Dkt. 1.

11        In Pierce's operative complaint, he complained of only one law—Prop. 123—and

12   sought only one form of relief—an injunction preventing the implementation of Prop. 123

13   until Congress provided its consent.  Dkt. 41 at 7.

14        While this case was pending, Congress consented to Prop. 123 in the Consolidated

15   Appropriations Act, which the President signed on March 23, 2018.  Pub. L. 115-141,

16   Title IV, Sec. 401 (2018) ("H.R. 1625").

17        On March 26, 2018, this Court issued an order that concluded, *inter alia*, that the

18   only remedy Pierce requests in his Second Amended Complaint had become moot due to

19   H.R. 1625.  Dkt. 113 at 1–2 ("The case is now moot to the extent of school land trust fund

20   distributions from this time forward.").  Nonetheless, the Court noted that there were still

21   potentially other questions to be resolved: first, whether H.R. 1625 retroactively

22   authorized the distributions already made under Prop. 123; and second, whether H.R.

23   1625 retroactively authorized Proposition 118 and the Trust Fund distributions made

---

24   [1]    The State of Arizona was "dismissed from this action for a lack of
25   jurisdiction under the 11th Amendment."  Dkt. 100.  In the Court's March 26, 2018
     docket entry, however, the Court stated it was denying the State of Arizona's Motion to
26   Dismiss.  Dkt. 113 at 32.  Therefore, for the avoidance of doubt, the State joins the
     Governor in opposing Pierce's instant motion.

1   thereunder.  *Id.* at 32.

2       On May 1, 2018, Pierce filed the instant motion for entry of final judgment.  Dkt.

3   122.  He agrees that H.R. 1625 moots his current request for relief and that H.R. 1625

4   retroactively authorized all distributions under Prop. 123.  *Id.* at 2.  Pierce also states that

5   he is not asserting claims relating to Prop. 118 in federal court.  *Id.*

6       Instead, Pierce requests that the Court issue a judgment on the claim asserted in his

7   proposed Third Amended Complaint, which requests an injunction prohibiting the

8   Governor from "implementing any changes to the Arizona Constitution that affect the

9   investment or distribution of the assets in the School Trust Fund . . . until and unless

10   Congress provides consent to such changes by way of amendment to the Arizona

11   Statehood and Enabling Act."  *Id.* (quoting Proposed Third Amended Complaint at 6, ¶ 3).

12   **II.    The Court Cannot Enter A Judgment On Pierce's Concededly Moot Claims**

13       **Concerning Prop. 123.**

14       Mootness is a jurisdictional doctrine, arising out of Article III's requirements that

15   the federal courts' jurisdiction be limited to actual cases and controversies.  *DeFunis v.*

16   *Odegaard*, 416 U.S. 312, 316 (1974).  Thus, if the case is moot, the Court lacks the power

17   to issue any relief at all.  *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without

18   jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare

19   the law, and when it ceases to exist, the only function remaining to the court is that of

20   announcing the fact and dismissing the cause.").

21       In his operative complaint, Pierce challenged Prop. 123 because it lacked

22   congressional consent, and sought to "enjoin[] the State of Arizona from implementing

23   the Proposition 123 changes to Article X, Section 7 of its Constitution unless Congress

24   amends the Enabling Act to authorize or consent to such changes."  Dkt. 41 at 7.

25   Congress consented to Prop. 123 in H.R. 1625.  Thus, the conduct Pierce complained of

26   has been eliminated.  As the Court recently noted, "[t]he case is now moot to the extent of

1   school land trust fund distributions from this time forward." Dkt. 113 at 1–2.  Pierce

2   agrees that "H.R. 1625 moots Mr. Pierce's claim for injunctive relief going forward in

3   regard to implementation of the changes proposed in [Prop. 123]." Dkt. 122 at 2.

4        There is no live federal controversy concerning the two other issues that the Court

5   raised in its Order.   Plaintiff concedes that H.R. 1625 retroactively authorized prior

6   distributions under Prop. 123. *Id.*  And Pierce is not asserting claims related to Prop. 118

7   in federal court.   *Id.*   Therefore, this Court lacks Article III jurisdiction to enter any

8   judgment on Plaintiff's claim in his operative complaint concerning Prop. 123.   Pierce

9   apparently recognizes as much because his motion requests judgment not on any claim in

10  his operative complaint, but on a *new claim* for injunctive relief asserted in his proposed

11  Third Amended Complaint, which this Court has not yet allowed. *Id.*

12       Plaintiff's invocation of the "voluntary cessation" exception to the mootness

13  doctrine therefore is perplexing. *See id.* at 2–3.  This exception allows a court to retain

14  jurisdiction to order prospective relief against conduct that the defendant has voluntarily

15  ceased, but could resume if he wished. *See Native Vill. of Noatak v. Blatchford*, 38 F.3d

16  1505, 1510 (9th Cir. 1994) (voluntary cessation exception applies when "the *defendant*

17  voluntarily ceases the allegedly improper behavior in response to suit, but *is free to return*

18  *to it at any time*.") (emphases added).  But Plaintiff seeks no relief with respect to Prop.

19  123.  He instead seeks a judgment only as to *future* "changes to the Arizona Constitution

20  that affect the investment or distribution of the assets in the School Trust Fund." Dkt. 122

21  at 2.  Even if it applied, the voluntary cessation exception to the mootness doctrine would

22  not grant jurisdiction to enter a judgment on this *new* claim; the exception would preserve

23  only the Court's jurisdiction to enter a judgment on Plaintiff's otherwise moot claim with

24  respect to Prop. 123.

25       But the voluntary cessation exception does not apply even to Plaintiff's claim as to

26  Prop. 123, for three independent reasons.

First, H.R. 1625 is not an act of voluntary cessation by the Governor.  It is, instead, an Act of Congress.  That the Governor requested federal legislative action does not make the Act of Congress an act of the Governor.  The Governor and Congress are not even part of the same sovereign—and the actions of one certainly cannot be ascribed to the other in order to circumvent Article III's minimum constitutional requirements for justiciability.

Second, H.R. 1625 does not leave the Governor "free to return," *Defunis*, 416 U.S. at 318, to the allegedly unlawful conduct of implementing Prop. 123 in the absence of congressional consent.  It is, in fact, not Governor Ducey, but the State Treasurer, who implements Prop. 123.  *See* Ariz. Rev. Stat. Ann. § 41-172 (2012); *see also* Ariz. Const. art. X, § 7.  Moreover, under H.R. 1625, it is impossible for any state official to "return" to implementing Prop. 123 in the absence of congressional consent for the simple reason that Congress's consent may not be rescinded by anyone but Congress.  If, before H.R. 1625, the State of Arizona had declared that it would stop implementing Prop. 123—and was still a party to this litigation—*that* would have been voluntary cessation.  But that is not what happened here.[2]

Third, the Ninth Circuit has held that when the mooting event is a change in the law, this usually does not qualify as voluntary cessation.  *Blatchford*, 38 F.3d at 1510. The reason for this rule is straightforward: when the case becomes moot because the law has been amended, the case will become live again only if the law is returned to its earlier state, which is an onerous and lengthy process requiring a plurality of actors and thus presents little concern of defendant "recidivism."  And that rationale applies with only greater force here, where the Defendant is entirely separate from the legislature that

---

[2]   Nor is Governor Ducey "free" to engage in future congressionally unauthorized changes to the Trust Fund distribution formula.  To change the Trust Fund formula is an arduous task, requiring a constitutional amendment approved by the voters. Because the Governor exercises no control over the constitutional amendment process, it can hardly be said that the Governor is "free" to alter the Trust Fund formula without congressional consent.

FENNEMORE CRAIG, P.C.
PHOENIX

1  enacted the change in law and where the hypothesized "return" requires a *constitutional*
2  amendment.

3  **III.    This Court Lacks Article III Jurisdiction Over Plaintiff's Manifestly Unripe**
4  **New Claim With Respect To Future Amendments To The Arizona**
5  **Constitution.**

6          This Court's jurisdiction is limited to actual cases and controversies.  U.S. Const.
7  art. III.  This requires, among other things, that the plaintiff have suffered an injury that is
8  "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504
9  U.S. 555, 560 (1992) (internal citations and quotations omitted).  Here, the prospect of a
10  future amendment to the Arizona Constitution to alter the Trust Fund formula—and the
11  notion that Pierce would be injured by that—is entirely speculative, resting on the
12  supposition that: at some unspecified date in the future, either the legislature or a group of
13  citizens equal to 15% of the votes cast for governor in the last election would propose a
14  constitutional amendment and then more than 50% of Arizonans voting on the measure
15  would approve it, Congress would withhold its consent from that law, and the State would
16  implement it anyways.  Pierce asserts that "Arizona has changed the distribution formula
17  three times in the past 20 years [and] it is reasonably likely that it will do so again in the
18  foreseeable future."  Dkt. 119 at 2.  This sort of divination is the exact kind of
19  "conjectural" harm that does not qualify for standing.[3]

20          Further, claims predicated on legislation not yet enacted—and here not even
21  pending—are unripe and insufficient to invoke Article III jurisdiction.  *See Jones v.*
22  *Markiewicz-Qualkinbush*, 842 F.3d 1053, 1062 (7th Cir. 2016) ("It is, of course, a
23  fundamental principle that '[f]ederal courts . . . cannot . . . advise on the constitutionality
24  of proposed legislation.'") (insertions and omissions in the original) (citations omitted);

25  ―――――――――――
       [3]       Moreover, only congressionally *unauthorized* amendments would, on
26  Pierce's theory, cause injury, but the parties agree that at least two of the three prior
       amendments Pierce references ultimately were authorized by Congress.

*San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (holding that a case was not ripe for review because it was "devoid of any factual context whatsoever [and n]either the district court nor [the Ninth Circuit] can be 'umpire to debates concerning harmless, empty shadows.'") (citations omitted); *see also Kronberg v. Hale*, 180 F.2d 128, 130 (9th Cir. 1950) ("[T]he federal courts have consistently held that the judicial power does not extend to the rendition of advisory opinions on *hypothetical states of facts*.") (emphasis added).  "Ever since the Constitutional Convention . . . it has been clear that . . . the task of analyzing a proposed statute, pinpointing its deficiencies, and requiring correction of these deficiencies before the statute is put into effect, is rarely if ever an appropriate task for the judiciary." *Younger v. Harris*, 401 U.S. 37, 52 (1971).

There are two basic rationales for that rule.  First, it is a common-sense truth that the plaintiff cannot suffer an injury-in-fact based on a state law until the state law has been enacted.  Article III requires a plaintiff to have suffered an injury in fact that is "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560 (citations omitted).

Second, details of the legislation, and the particular way in which it affects the plaintiff, may inform the analysis of a plaintiff's legal claims.  If and when Arizona next amends its Constitution to alter the Trust Fund distribution formula, Pierce may have changed his views about whether such an amendment in the absence of congressional consent injures him.  Indeed, it is possible—and certainly no less probable than the future amendment Pierce hypothesizes—that Congress will amend the Enabling Act to eliminate entirely the requirement for consent to changes to the Trust Fund distribution formula.  That would mean that there would be no violation of federal law.  Yet the injunction Pierce proposes still would enjoin the change to the Trust Fund formula unless Congress provides consent.  This illustrates starkly why the ripeness doctrine exists: it prevents the premature and ill-informed adjudication of claims that may never arise.  *See Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967) (The "basic rationale is to prevent the courts,

1   through avoidance of premature adjudication, from entangling themselves in abstract

2   disagreements . . . .").  Pierce's effort to enjoin future changes to the Trust Fund formula

3   violates that basic Article III requirement.

**IV.    Pierce's Motion For Judgment Is Procedurally Improper.**

5          Even if the Court had Article III jurisdiction to entertain Pierce's new claims with

6   respect to hypothetical future amendments to the Arizona Constitution—and it does not—

7   Pierce's motion must be denied because it is procedurally defective.  Pierce is seeking

8   judgment on an entirely new claim that is made thus far only in a *proposed* Third

9   Amended Complaint.  Governor Ducey's time to answer or otherwise respond to this

10  proposed new complaint has not even *begun* to run.  *See* FED. R. CIV. P. 12(a)(1).  Pierce's

11  "motion for entry of final judgment on the merits" thus could be granted only as a motion

12  for *summary judgment* under FED. R. CIV. P. 56.  Yet, Pierce's motion does not satisfy this

13  District's rules for such motions.  *See* L.R. Civ. 56.1(a) (requiring separate statement of

14  material facts).  But even if this Court were inclined to waive the District's requirements,

15  it cannot waive the standard that applies to such motions:

16              [C]ourts may not resolve genuine disputes of fact in favor of
                the party seeking summary judgment . . . a "judge's function"
17              at summary judgment is not "to weigh the evidence and
                determine the truth of the matter but to determine whether
18              there is a genuine issue for trial." Summary judgment is
                appropriate only if "the movant shows that there is no
19              genuine issue as to any material fact and the movant is
                entitled to judgment as a matter of law." In making that
20              determination, a court must view the evidence "in the light
                most favorable to the opposing party."
21

22  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citations omitted).

23         Pierce's new claim asserted in his proposed Third Amended Complaint rests on

24  disputed factual assertions.  First, Pierce asserts that, in the future, Arizona will amend its

25  Constitution to alter the Trust Fund formula in a way that requires Congress's consent.

26  *See* Dkt. 119 at 2.  Second, Pierce asserts that the Governor (whoever it may be at that

unspecified time in the future) will proceed to implement the amendment to the State's Constitution notwithstanding the existence of a federal requirement to obtain consent.[4]  *Id.* Pierce's new claim also is predicated on the factual assertion that, whenever Arizona next amends its Constitution to alter the Trust Fund formula, federal law still will require that Arizona obtain consent from Congress for such a change, and that Congress will withhold its consent.

Because there remain "genuine disputes of material fact," Pierce's preemptive motion for judgment on his new claim must be denied.  But the impossibility of building a factual record on any of these issues, which are essential predicates to Pierce's new claim for injunctive relief, points even more forcefully to the conclusion that there is no Article III case or controversy that this or any other Court could adjudicate with respect to hypothetical future amendments to the Arizona Constitution.

## V.  Conclusion

Pierce brought suit to prohibit the implementation of Prop. 123 until Congress provided its consent.  Congress has provided its consent.  That claim is concededly moot, and the voluntary cessation exception does not apply.  The new claim Pierce seeks to bring in his proposed Third Amended Complaint is not justiciable.

Thus, Governor Ducey respectfully requests that the Court DENY Pierce's Motion for Entry of Final Judgment on the Merits.

---

[4]  A glaring issue with this supposition is that the Governor is not even the person who implements Trust Fund distributions—it is rather the State Treasurer, who is independently elected.  *See* Ariz. Rev. Stat. Ann. § 41-172 (2012); *see also* Ariz. Const. art. X, § 7; *see also* Ariz. Const. art. V, § 1.

1        DATED this 17th day of May, 2018.

2   MARK BRNOVICH                          FENNEMORE CRAIG, P.C.
    ATTORNEY GENERAL
3

4                                          By s/ *Timothy Berg*
                                              Timothy Berg
5   By s/ *Dominic E. Draye* (w/permission)   Emily Ward
       Dominic E. Draye
6       Solicitor General
    Keith J. Miller                         OFFICE OF GOVERNOR
7       Assistant Attorney General          DOUGLAS A. DUCEY
                                               Anni Foster
8   *Attorneys for Defendant*
    *State of Arizona*                       GIBSON, DUNN & CRUTCHER LLP
9                                              Theodore B. Olson
                                               Matthew D. McGill
10
                                           GREENBERG TRAURIG, LLP
11                                             Michael T. Liburdi

12                                         *Attorneys for Defendant*
                                           *Governor Douglas A. Ducey*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 17, 2018, I electronically transmitted the attached

3

document to the Clerk's Office using the ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following ECF registrants:

5

Andrew S. Jacob
Gordon & Rees LLP

6

111 W Monroe Street, Suite 1600
Phoenix, AZ 85003-1736

7

Email:  AJacob@gordonrees.com
*Attorneys for Plaintiff*

8

9

Theodore B. Olson
Matthew D. McGill

10

Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.

11

Washington, DC  20036-5306
Email:  tolson@gibsondunn.com

12

Email:  mmcgill@gibsondunn.com
*Attorneys for Defendant*

13

*Governor Douglas A. Ducey*

Anni Foster
Office of the Governor
1700 W. Washington Street
Phoenix, AZ 85007
Email:  afoster@az.gov
*Attorneys for Defendant*
*Governor Douglas A. Ducey*

Dominic E. Draye
Keith J. Miller
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, AZ  85004-1592
Email: Dominic.Draye@azag.gov
Email: Keith.Miller@azag.gov
Email: SolicitorGeneral@azag.gov
*Attorneys for Defendant State of Arizona*

14

15

s/ *Phyllis Warren*

16

An employee of Fennemore Craig, P.C.

17

18

13931469

19

20

21

22

23

24

25

26